UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: CHARLIE S. HAYNES
JANET RENA HAYNES

CASE NO. 09-10096
CHAPTER 7

FIDELITY NATIONAL LOANS, INC.                                    PLAINTIFF

VERSUS                                        ADV. PROC. NO. 09-01114-DWH

CHARLIE S. HAYNES                                              DEFENDANTS
JANET RENA HAYNES

OPINION

On consideration before the court is a motion for summary judgment filed on behalf of Fidelity National Loans, Inc., ("Fidelity"); a response to said motion having been filed by the debtors/defendants, Charlie S. Haynes and Janet Rena Haynes, ("Debtors"); a reply having been filed by Fidelity; and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (O).

II.

On January 5, 2009, the debtors filed the above captioned bankruptcy case pursuant to Chapter 7 of the Bankruptcy Code. On June 30, 2009, Fidelity filed an adversary complaint objecting to the dischargeability of the debt owed by the debtors pursuant to § 523(a)(6); § 523(a)(2)(A), and § 523(a)(2)(B) of the Bankruptcy Code.

On June 4, 2008, the Haynes executed a promissory note and security agreement in favor of Fidelity in the sum of $9,408.00. The indebtedness was secured by the following items, collectively referred to as "personalty":

(1) 28 bulb tanning bed ("tanning bed");

(1) computer with printer and scanner ("computer");

(1) car hauler ("hauler");

(1) car dolley ("dolley"); and

(1) 1979 Jeep CJ-5 ("Jeep").

Contemporaneous with the execution of the note, the Haynes executed a Schedule A security listing, certifying that the tanning bed, computer, hauler, and dolley were owned solely by them, that these items were located at their residence, that they were free and clear of any liens, claims, mortgages, attachments, or offsets, and were valued at $1,800.00, $1,000.00, $2,700.00, and $1,000.000, respectively. Charlie Haynes executed a Vehicle Report certifying, *inter alia*, that the Jeep was in good condition and valued at $3,120.00. During this time frame, Charlie Haynes was an independent contractor who performed repossession services for Fidelity.

Fidelity asserts in a sworn affidavit that it relied upon the debtors' representations as to the condition and value of the listed items before approving the loan and advancing the loan proceeds. The Haynes acknowledge that the above listed personalty was included as collateral for the Fidelity loan. However, they contend that Fidelity's loan representative merely re-listed collateral from an earlier loan document and was unconcerned about value or condition.

On April 13, 2009, pursuant to a motion filed by Fidelity, an order was entered by this court lifting the automatic stay and abandoning the personalty from the debtor's bankruptcy estate.

At his deposition, Charlie Haynes testified that when Fidelity came to repossess the tanning bed, he no longer had it in his possession because an anonymous man had hauled it away

2

for scrap metal. He indicated that Fidelity had been notified that the tanning bed was broken and was no longer in working condition.

With respect to the hauler and dolley, he testified that this was actually only one piece of equipment. He and his wife had never been in possession of a separate hauler and dolley. Haynes indicated that Fidelity's employee incorrectly listed the hauler and dolley as two pieces in the loan documentation despite being specifically told that it was just a single item. Fidelity's representative allegedly replied that this didn't matter; he needed to list something. When the axle broke on the hauler/dolley, Hayes testified that he abandoned it on the roadside.

When Fidelity repossessed the Jeep, it had no tires, wheels, or axle. Haynes testified that the Jeep was in the same condition when Fidelity attempted to repossess it as it was when the Vehicle Report was executed in 2008, except that in 2008, it did have wheels and tires. The wheels had been taken off to be repaired and accidentally got thrown in a scrap pile and hauled away. When the note was executed, the axle was already broken and the rear wheels were simply bolted to it. At the time of the repossession, Haynes told the Fidelity representative that part of the broken axle was still in his possession, but Fidelity only wanted the Jeep and not the broken axle.

Haynes asserted both in his deposition and in his signed affidavit that, because of his relationship with Fidelity, the loan agents would carry forward collateral that he had previously pledged to Fidelity in earlier loan transactions. He indicated that he notified Fidelity when items of collateral were discarded or unworkable.

Fidelity alleges that the indebtedness owed by the Haynes should be excepted from discharge pursuant to § 523(a)(6) of the Bankruptcy Code. In this context, Fidelity contends that the debtors' actions in giving the tanning bed to an anonymous man for scrap, leaving the

hauler/dolley on the side of the road, and allowing the removal of the Jeep's wheels, tires, and axle were, at the very least, substantially certain to result in an injury or economic loss to Fidelity, and, in fact, did so.

Fidelity additionally contends that the Haynes indebtedness should be nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code, which provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" will not be discharged to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." Fidelity maintains that the debtors' certifications that the personalty items were owned solely by them, located at their residence, and valued at the respective amounts were materially false.

Finally, Fidelity contends that the Haynes debt should also be nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code, which provides that any debt for money, property, services, or an extension, renewal, or refinancing of credit, is non-dischargeable to the extent obtained, by use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such ... credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

Fidelity contends that the execution of Schedule A, and the certifications contained therein, as well as, the execution of the Vehicle Report, painted a fraudulent picture of the Haynes' financial condition by misrepresenting information which would normally affect a decision to extend credit and, in fact, did affect Fidelity's decision to extend credit to the Haynes.

III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Bankruptcy Rule 7056; Miss. Bankr. L.R. 7056-1. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F. Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show a genuine issue of material fact arises as to that issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under governing substantive law." *Id.* at 272.

The court notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of fact. *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995); *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994); *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989).

IV.

The court is of the opinion that there are several material factual issues that remain in dispute in this proceeding. The events that occurred during the preparation of the loan

documentation, specifically the listing and evaluation of the Haynes' personalty, must be established through further evidentiary proof. Whether the Haynes acted deliberately to defraud Fidelity or to wilfully and maliciously cause injury to Fidelity's collateral is clearly disputed. The conflicting factual assertions must be presented to the court in an evidentiary hearing and tested by cross-examination. For these reasons, the court finds that Fidelity's motion for summary judgment is not well-taken and must be overruled.

An order, consistent with this opinion, shall be entered contemporaneously herewith.

This, the 20th day of January, 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE